**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 15 2012, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
Bedford, Indiana 47421

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SUSAN R. MAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A05-1103-CR-178 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-1002-MR-162

**March 15, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Susan R. May (May), appeals her sentence for murder, a felony, Ind. Code § 35-42-1-1.

We affirm.

ISSUE

May raises one issue on appeal, which we restate as:  Whether the trial court properly sentenced May in light of the nature of the offense and her character.

FACTS AND PROCEDURAL HISTORY

In 2009, May and Jason Joy (Joy) were dating and lived together in a tent in the Hoosier National Forest.  During this relationship, May, who was on probation for theft, reported to her probation officer that Joy was abusive towards her and threatened to kill her and her children.  On the morning of September 2, 2009, May called her ex-husband, Roger May, Jr. (Roger) and asked to borrow his gun.  He refused.  Around noon, May and Joy arrived at Roger's apartment.  May entered the apartment while Joy remained outside.  Inside, May again insisted on getting Roger's gun.  He initially refused but he got "scared [of her] so [he] gave her the gun."  (Transcript p. 488).  May took the gun and walked towards the door.  She asked Roger to call her probation officer.  While walking out, May said "he isn't threatening me and my girls no more."  (Tr. p. 489).

May "started firing as she went out the front door."  She fired several shots at Joy. Joy fell face first to the ground beside a car.  May walked up beside Joy, aimed at his head and shot him again.  After firing two shots, May began to walk away, then she

stopped, turned around and fired two more shots at Joy. May shot Joy a total of eight times, with four of the shots producing injuries that would be fatal.

When Roger was unable to contact May's probation officer, he called 911. May returned to Roger's apartment, took the phone and told the police that she had just shot someone. She went back outside and sat down, waiting for police officers to arrive. Upon arrival of the police officers, May gave a complete statement. She admitted that she got Roger's gun because she intended to kill Joy. She claimed that Joy had abused her, raped her, threatened to torture her and her children, and to kill her probation officer.

On September 3, 2009, the State filed an Information charging May with murder, a felony. On January 21, 2011, a jury trial commenced. During trial, Dr. Lois Rifner (Dr. Rifner), a court-appointed psychologist, testified that May was sane and able to appreciate the wrongfulness of her actions at the time of the murder. Dr. Rifner performed an extensive review of May's mental health history and medical records and concluded that May's history of behavior and reported symptoms did not indicate that she suffered from schizophrenia, bipolar disorder, obsessive compulsive disorder, or dissociative identity disorder. Instead, Dr. Rifner opined that May had engaged in substantial drug-seeking behavior: she made numerous visits to the emergency room with complaints that were disproven through testing several times. May also made vague threats to hospital staff if she was not provided with the medications she requested. May admitted to having used cocaine for several years, including in the days leading up to Joy's murder. In sum, Dr. Rifner concluded that May likely suffered from poly-substance dependence and a possible borderline personality disorder, which means that

3

May shows a "pattern of behavior that's considered maladaptive and not particularly functional" but that is "not generally considered a psychiatric disorder in the same [line] as depression or schizophrenia." (Tr. p. 826).

At the close of the evidence, the jury was presented with eight different verdict forms, including not guilty of murder, guilty but mentally ill, and guilty of murder. After a five-day trial, the jury found May guilty as charged. On February 23, 2011, the trial court sentenced May to the Department of Correction for sixty-five years.

May now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

May contends that the trial court abused its discretion when it imposed a sixty-five year sentence for murdering Joy. A person who commits murder shall be imprisoned for a fixed term of between forty-five and sixty-five years, with the advisory sentence being fifty-five years. I.C. § 35-50-2-3. Here, the trial court imposed the maximum sentence under the statute.

As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *aff'd on reh'g,* 875 N.E.2d 218 (Ind. 2007). Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion by failing to properly weigh such factors. *Id*. at 491. This is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating

4

factors, it may then impose any sentence that is authorized by statute and permitted under the Indiana Constitution. *Id*.

This does not mean that criminal defendants have no recourse in challenging sentences they believe are excessive. *Id*. Although a trial court may have acted within its lawful discretion in determining a sentence, Appellate Rule 7(B) provides that the appellate court may revise a sentence authorized by statute if the appellate court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id*. The defendant bears the burden of persuading this court that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

With respect to the nature of the crime, May argues that "the nature, extent, and depravity" of her crime does not call for the maximum sentence allowed under the law. (Appellant's Br. p. 7). We disagree. May's actions on September 2, 2009, show the brutal and premeditated character of the crime. May deliberately went to her ex-husband's apartment to obtain a gun with every intention of using it on Joy. She immediately started firing as soon as she left the apartment. After Joy fell to the ground, she did not stop; rather, May walked up to him and, aiming at his head, shot him four more times. May acted calmly, even waiting for the police to arrive after the offense. Although May claimed she murdered Joy to protect herself and her daughters and even informed her probation officer of Joy's threats, she refused all offers of assistance. She did not ask for help in dealing with the threats or in attempting to get away from Joy. She never reported any abuse to the police.

Turning to May's character, we note that in the three years before the instant charge, she had been convicted of two felonies and a misdemeanor. She was on probation for all three offenses at the time of the crime. The record reflects that this is not the first time May committed violence against a man in her life. In the past, May hit her ex-husband, pushed him out of his wheelchair, and pulled a gun on him during an argument. Dr. Rifner also included in her report that May had a history of making inconsistent reports of childhood abuse: the allegations of abuse and her alleged symptoms varied from report to report.

At trial and at sentencing, May presented a history of mental illness and intimated that her mental illness had influenced her and contributed to the murder. Although faced with this evidence at trial, the jury rejected May's claim and found her guilty of murder. During sentencing, the trial court also rejected May's request to consider her mental illness as a mitigating circumstance. The records admitted at trial and during sentencing reflect that May visited several hospitals and doctors complaining of a variety of mental illnesses. However, she failed to attend follow up appointments for counseling and sought to control her symptoms through medication. She took more than the prescribed dosage, presenting to emergency rooms seeking drugs and pain medications. Evaluating her medical records, Dr. Rifner concluded that instead of suffering from a mental illness, May most likely suffered from poly-substance abuse and a personality disorder.

The evidence overwhelming indicates that May admitted and intended to murder Joy, acting calmly and deliberately in her execution. After the murder, she knew what she had done but felt her actions were justified, stating "I am sorry I had to do it, but not

6

sorry that I did it." (Appellant's App. III, p. 294). We conclude that May failed to establish that her sentence is inappropriate in light of her character and the nature of the offense. We affirm the trial court's imposition of a sixty-five year sentence.

CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in sentencing May.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur